IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>DAVID A. LACY,<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS DAVID A. LACY'S STATEMENTS TO LAW ENFORCEMENT OFFICERS<br><br><br>Case No. 2:09-CR-45 TS |

This matter comes before the Court on Defendant's Motion to Suppress. Defendant seeks to suppress any and all statements made by him to law enforcement officers on June 10, 2009. Defendant argues that his statements should be suppressed because he was not informed of his *Miranda*[1] rights. For the reasons discussed below, the Court finds that Defendant was given a proper *Miranda* warning, that he voluntarily, knowingly, and intelligently waived those rights, and voluntarily made statements to law enforcement. Therefore, the Court will deny Defendant's Motion.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

## I. FINDINGS OF FACT

On the morning of June 10, 2009, agents from the Federal Bureau of Investigation ("FBI") and the Bureau of Land Management ("BLM") went to the residence of Defendant David A. Lacy to execute search and arrest warrants. A group of 10 to 12 law enforcement officers and other personnel (including a BLM archeologist and two evidence technicians) arrived at the residence at approximately 6:30 a.m. The BLM officers wore attire identifying themselves as law enforcement, while the FBI agents were in plain clothes. All of the officers were armed.

Two BLM Rangers, National Chief Ranger Caffey and Ranger Kotlowski, were part of the group of law enforcement officers and were given the assignment of interviewing Defendant. Neither Ranger Caffey nor Ranger Kotlowski were participants in the investigation which led to the issuance of the search and arrest warrants, nor did they work directly together as part of their regular assignments. Rather, these Rangers were brought in from outside Utah specifically to assist in executing the search and arrest warrants.

Upon arriving at Defendant's residence, the officers initially attempted to make contact with Defendant at the front of the house, but were unsuccessful. The officers ultimately made contact with Defendant at the rear of the house. Rangers Caffey and Kotlowski were not actively involved in the initial contact with Defendant.

Once contact was made with Defendant, Ranger Caffey greeted him and asked if he would step outside. Defendant asked what was going on and Ranger Caffey informed Defendant that they had a search warrant. Upon explaining the search warrant, Defendant stated "I'll show

you anything you want to see and I'll tell you anything you want to know."[2] Ranger Caffey described Defendant as being "very cooperative."[3] At this time, the Rangers did not inform Defendant that they also had an arrest warrant.

Defendant was allowed to change his clothes and proceeded to take Rangers Caffey and Kotlowski to an upstairs room where various items were being stored. After Defendant showed the Rangers the items in this room, Ranger Caffey asked Defendant if there was a place where they (Defendant, Ranger Caffey, and Ranger Kotlowski) could talk. Defendant then showed the Rangers to a bedroom. Once they entered the bedroom and chairs were set up, the interview began.

Both Ranger Caffey and Kotlowski testified that Ranger Kotlowski advised Defendant of his *Miranda* rights at the beginning of the interview. Both Ranger Caffey and Kotlowski testified that Ranger Kotlowski read those rights from an Advisement of Rights Card.[4] Ranger Caffey and Kotlowski both testified that Defendant responded that he understood his rights and that he was willing to answer questions. Ranger Caffey testified that Defendant "said he would tell us anything we wanted to know. He was very cooperative."[5]

At this time, the Rangers did not ask Defendant to sign a written acknowledgment and waiver of his *Miranda* rights ("Advice of Rights Form"). Ranger Kotlowski testified that he did

---

[2]Docket No. 76 at 25:9-11.

[3]*Id*. at 25:11.

[4]Hearing Ex. 1.

[5]Docket No. 76 at 29:16-17.

3

not ask Defendant to sign an Advice of Rights Form at that time because he did not have the form with him. Defendant did, however, sign an Advice of Rights Form at the conclusion of the interview.[6] Though Defendant did sign this form, it was not signed by the Rangers, nor was the time noted on the document.

Defendant testified that he was not given a *Miranda* warning. Rather, Defendant stated that there was some discussion about an attorney: "They said that I could have an attorney. And I said, well, I thought we was just talking. They says, yeah, we're just talking. I said, well, then, I guess I don't need an attorney. And they said, yeah, that's right."[7] Defendant testified that it was only at the close of the interview that he was presented with the Advice of Rights Form to sign. Defendant testified that, at this point, he said that he would no longer speak to the officers. Defendant did testify, however, that he was very aware of his *Miranda* rights because of television and his experience with family members who are involved in law enforcement.

The interview itself lasted somewhere between two and four hours.[8] Defendant did not ask to terminate the interview and did not ask for an attorney. Defendant was not denied any breaks (though Defendant testified he did not ask for any), no threats or promises were made, no physical restraints were used, and no weapons were displayed. Defendant testified that the entire conversation was voluntary.

---

[6]Hearing Ex. 3.

[7]Docket No. 76 at 112:21-24.

[8]Ranger Caffey testified that the interview lasted between two and three hours. Ranger Kotlowski testified that the interview lasted two hours. Defendant testified that the interview lasted between three and four hours.

During the interview, Ranger Kotlowski left the room at one point to deliver the Consent to Search form,[9] authorizing the search of a vehicle, to another officer and to retrieve the Advice of Rights Form from his vehicle. The Consent to Search form was signed at approximately 8:00 a.m. As discussed above, the Advice of Rights Form was not presented to Defendant until the end of the interview, at which point he did sign it.

At the conclusion of the interview, Defendant was informed of the arrest warrant and was placed under arrest. Ranger Caffey testified that he had not previously informed Defendant of the arrest warrant previously out of safety concerns.

Later that day, Rangers Caffey and Kotlowski prepared a report. That report states, in pertinent part:

> After viewing the artifacts Ranger Kotlowski, LACEY and I moved to a different room where we asked him to speak with us in further detail regarding the artifacts and his excavation activities. I explained to LACEY that he did not have to speak with us and could also wait to answer questions with a lawyer present. LACEY said that he understood that it was his choice to speak with us right then but wanted to do so (see attached waiver of Miranda Rights.).[10]

Ranger Caffey acknowledged at the suppression hearing that the report does not mention anything about Ranger Kotlowski reading Defendant his *Miranda* rights. Ranger Caffey further testified that if he Mirandized an individual, he would normally put that in a report.

---

[9]Hearing Ex. 2.

[10]Hearing Ex. C at 2.

## II. DISCUSSION

Defendant's Motion requires the Court to address the following issues. First, the Court must determine whether Defendant was advised of and subsequently waived his *Miranda* rights. Second, if he was advised of and waived those rights, the Court must determine whether Defendant's statements were voluntary. Finally, the Court must determine whether Defendant's statements should be suppressed because the officers failed to inform him that he was under indictment at the time of the interview.

A. *MIRANDA*

The government concedes, for the purposes of this proceeding, that Defendant was subject to custodial interrogation and, therefore, *Miranda* warnings were required. The government argues that Defendant's custodial interrogation was preceded by a proper *Miranda* warning and that Defendant subsequently waived those rights. Defendant argues that no warning or waiver was ever given. Both parties recognize that the Court's determination of this issue turns on the credibility of the witnesses involved.

"If a defendant talks to police after being advised of his right to remain silent, the government bears the burden of proving by a preponderance of the evidence that the waiver of the right was voluntary."[11]

> To establish a voluntary waiver of Fifth Amendment rights, the government must show (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full

---

[11]*United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

awareness of the nature of the right being waived and the consequences of waiving.[12]

Having reviewed the evidence and considered the credibility of the witnesses, the Court finds that Defendant's custodial interrogation was preceded by a proper *Miranda* warning and that Defendant subsequently waived those rights. The Court bases this conclusion on a number of factors.

First, the Court finds Rangers Caffey and Kotlowski to be highly credible. As set forth above, these Rangers had a limited role in this case: the execution of the search and arrest warrants. They were not involved in the investigation leading up to those warrants and do not otherwise work in the same region. Both Rangers testified in a very consistent manner. Ranger Kotlowski testified that he informed Defendant of his *Miranda* rights by reading from an Advisement of Rights card. Similarly, Ranger Caffey testified that Ranger Kotlowski read Defendant his rights from a card. Both Rangers testified that Defendant was cooperative and was willing to speak with them. The Court finds these Rangers have little, if any, motivation to testify falsely about these things.

Defendant points to a number of inconsistencies in the testimony of Rangers Caffey and Kotlowski which he believes call their credibility into doubt. However, these alleged inconsistencies merely show that not every operation is perfect and that the Rangers were not able to remember every detail of the encounter in question some months later. The Court does not find these inconsistencies to be such that they undermine the credibility of the Rangers.

---

[12]*Id*. (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Second, the Court deems the Advice of Rights Form to be highly relevant. While it is conceded that this form was not presented to Defendant until after the interview concluded, it was presented to him and was signed by him. The Rangers need not have presented this form to Defendant and Defendant did not need to sign it. The fact that both of those things occurred only bolsters the Ranger's testimony concerning the reading and waiver of *Miranda* warnings.

Third, the Court finds Defendant's testimony on this issue to be less credible than that of the Rangers. For example, Defendant testified that he was very familiar with his *Miranda* rights, but that he did not know that he had a right to terminate the interview, that he had the right to remain silent, and that he had the right to an appointed lawyer. While this does not go to the issue of whether or not Defendant was advised of his *Miranda* rights, it does go to the issue of credibility. Further, Defendant testified that he was surprised and that there were a lot of things going on that morning. This may have impacted his memory of the events of that day. Finally, the Court cannot ignore the motivation Defendant has in stating that *Miranda* warnings were not given.

Last, the Court must address the report prepared by the Rangers after Defendant had been arrested. Defendant relies heavily on the report and its failure to state that Defendant was read his *Miranda* rights. Defendant also relies on Ranger Caffey's statement that he would normally put in a report if he Mirandized an individual.

As set forth above, the report states:

After viewing the artifacts Ranger Kotlowski, LACEY and I moved to a different room where we asked him to speak with us in further detail regarding the artifacts and his excavation activities. I explained to LACEY that he did not have to speak with us and could also wait to answer questions with a lawyer present. LACEY

8

said that he understood that it was his choice to speak with us right then but wanted to do so (see attached waiver of Miranda Rights.).[13]

The Court agrees that the report is lacking in detail and could have been better prepared. However, the Court finds that the limitations of the report do not outweigh the other considerations set forth above.

For all of these reasons, the Court finds that the government has met its burden of showing that Defendant was given his *Miranda* warnings and that he voluntarily, knowingly, and intelligently waived those rights.

B.      VOLUNTARINESS

Having found that Defendant was given a *Miranda* warning and that he waived those rights, the Court must next determine whether Defendant's statements were voluntary. The government argues that Defendant's statements were voluntary and Defendant has not directly responded to this argument.

"Whether a defendant's incriminating statements were made voluntarily must be assessed from the totality of the circumstances, looking both at the characteristics of the defendant and the details of the interrogation."[14] "The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne."[15] Courts typically consider five factors in a voluntariness inquiry: "(1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and

---

[13] Hearing Ex. C at 2.

[14] *United States v. Rith*, 164 F.3d 1323, 1333 (10th Cir. 1999).

[15] *Id*.

nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment."[16]

Considering these factors, the Court finds Defendant's statements were voluntary. First, there was no evidence introduced concerning Defendant's age or education. It was elicited, however, that Defendant is a school teacher and the Court's observations revealed him to be an intelligent individual. The Court finds that Defendant "was not unusually susceptible to coercion because of his age or lack of education or intelligence."[17]

Considering the second and third factors, the testimony revealed that the interview took between two and four hours. During this time, Defendant was never denied a break, though Defendant testified he did not ask for one. The interview took place at Defendant's home and Defendant admitted that the conversation was voluntary. No threats or promises were made to Defendant during the interview. The Rangers did not physically restrain Defendant nor did they display their weapons during the interview.

Fourth, as stated above, Defendant was informed of his constitutional rights and he voluntarily, knowingly, and intelligently waived those rights.

Finally, there is no evidence or allegation that Defendant was subjected to any physical punishment. Considering the totality of the circumstances, the Court finds Defendant's statements to be voluntary.

---

[16] *United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997).

[17] *United States v. Chalan*, 812 F.2d 1302, 1308 (10th Cir. 1987).

C.  SIXTH AMENDMENT

Defendant's final argument is that his statements should be suppressed because the Rangers failed to inform him that he was under indictment. Defendant essentially argues that the Sixth Amendment requires something more than a *Miranda* warning before a knowing and intelligent waiver of the Sixth Amendment right to counsel can be effectuated.

The Supreme Court has held that,

> [a]s a general matter, . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.[18]

The Court, however, did not address the question of "whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment wavier will be valid."[19] The Court went on to note that only one other court, the Second Circuit, had adopted additional requirements before a Sixth Amendment waiver could be effectuated.[20] The Supreme Court rejected the Second Circuit's holding that some "additional" warnings or discussions with an accused are required.[21]

The Tenth Circuit has apparently not ruled on this issue. Those courts of appeal that have addressed the issue have uniformly "held that the authorities need not inform the accused that he

---

[18]*Patterson v. Illinois*, 487 U.S. 285, 296 (1988).

[19]*Id*. at 295 n.8.

[20]*Id*. (citing *United States v. Mohabir*, 624 F.2d 1140, 1150-53 (2d Cir. 1980)).

[21]*Id*.

11

has been indicted before seeking a postindictment waiver."[22] Even the Second Circuit has abandoned the notion that something additional is required under the Sixth Amendment before a valid waiver of counsel may be obtained.[23]

Considering the opinions from various circuits, as well as the reasoning of the Supreme Court in *Patterson*, the Court finds that the *Miranda* warnings given to Defendant were sufficient to advise him of his Sixth Amendment rights and that his statements need not be suppressed because he was not informed of the indictment against him.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 53) is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of this Order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H).

Counsel are direct to contact Magistrate Judge Alba's chambers by April 12, 2010, for a pretrial conference to set a trial date.

---

[22] *United States v. Chadwick*, 999 F.2d 1282, 1284 (8th Cir. 1993) (citing cases from the Second, Third, Fourth, Seventh, and Ninth Circuits).

[23] *See United States v. Charria*, 919 F.2d 842, 848-49 (2d Cir. 1990) (holding "that giving an indicted defendant *Miranda* warnings is sufficient to make 'knowing and intelligent' his waiver of the sixth amendment right to counsel, even if the defendant has not been expressly informed of the indictment pending against him").

DATED   April 8, 2010.

          BY THE COURT:

          _____
          TED STEWART
          United States District Judge